### MARQUARDT v. BALL ENGINE CO.

(Circuit Court of Appeals, Sixth Circuit. April 4, 1903.)

No. 1,116.

**1. DEATH—DANGEROUS MACHINERY—DEFECTIVE APPLIANCES — LIABILITY OF MANUFACTURER.**

Plaintiff's intestate was killed by the breaking of a fly wheel on an engine manufactured by and purchased from defendant by his employer, by reason of the defective working of a prismatic valve therein, which, with the purchaser's consent, had been substituted (at least, for trial purposes) by defendant for a telescopic valve provided for by the specifications. The valve furnished was of a pattern extensively used, and after the accident it was used for several months without dangerous results. *Held,* that the proof was insufficient to show that the engine, equipped with such valve, was imminently dangerous, so as to render defendant liable for intestate's death.

**2. SAME—DIRECTION OF VERDICT.**

Where, in an action for death, it would have been the duty of the court to set aside a verdict for plaintiff, had one been returned, it was proper for the court to direct a verdict for defendant.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

This action was brought to recover for wrongfully causing the death of Gustav Marquardt, an assistant engineer of the Perry-Payne Company. This company was the owner of an office building in the city of Cleveland, Ohio. It had occasion to use an engine in the operation of its electric plant and otherwise, and purchased it from the Ball Engine Company, a manufacturer of steam engines at Erie, Pa. In the specifications for the engine, it was

provided that a telescopic valve should be used. The defendant put in (claiming greater usefulness and efficiency for it) a valve known as a "prismatic valve." When the engine was set up, in January, 1899, an expert of the defendant company was present, and for about one week remained with the engine, assisting in operating and adjusting it. For several days after the expert of the defendant company left, the engine was operated under the supervision of the engineer of the Perry-Payne Company. On the 21st of January, 1899, the fly wheel attached to the engine suddenly burst, flying in pieces, one of which struck and fatally injured Marquardt, the assistant engineer, then employed in the discharge of his duties about the engine. The plaintiff's testimony tended to show that the valve furnished by the defendant was, owing to its shape and construction, liable to bind and to prevent the smooth working of the engine. The engine was furnished with what is known as an "inertia governor." This was connected by a "rocker" and valve rod with the valve. Defects are charged in the fly wheel, in having a faulty spoke, containing a sand hole or blow hole which had been filled with soft metal, dressed down, and painted so as to conceal it from view; that the tension spring attached to the governor was held by a bolt which was three-quarters broken; that when the engine was set up, to overcome slight noises in its operation, a hole had been drilled in the steadying lug or rest of the governor which bears against the outer hub of the fly wheel, and filled with brass to such an extent that, resting against the iron hub end without lubrication, the friction of the brass against the iron hub end placed an undue strain on the tension spring of the governor, held by the defective bolt. The plaintiff gave evidence tending to show that the valve, instead of working freely, had a binding tendency, due to its construction and uneven expansion when heated, and was consequently unsafe to use. In the opinion of experts called by the plaintiff, the destruction of the fly wheel was caused by the valve sticking or binding, causing a pulling force to be exerted by the attaching rods upon the governor, thus exerting an undue strain upon the tension spring and breaking the defective bolt. When the spring was broken, the governor would strike upon the stops upon the rim of the fly wheel, breaking it while still being carried by the momentum of the 285 revolutions per minute at which it was going. At the conclusion of the plaintiff's testimony, the court, upon motion of the defendant, directed a verdict in its favor.

George O. Willet, for plaintiff in error.

E. K. Wilcox, for defendant in error.

Before LURTON, DAY, and SEVERENS, Circuit Judges.

DAY, Circuit Judge, after the foregoing statement, delivered the opinion of the court.

A perusal of the record makes it evident that the plaintiff's case could only have been submitted to the jury upon the theory that an improperly constructed valve caused the breaking of the fly wheel, and the consequent injury and death of Marquardt. Neither the defective bolt to the tension spring, the brass filling creating friction with the hub end, nor the defective spoke, could have caused the injury, without the primary cause attributed to the bad working of the valve. If plaintiff's case was made out at all, it was upon the theory that the valve was the source of the mischief. Under ordinary circumstances, there is nothing to show that the bolt would not have held the tension spring, or that the filling or defective spoke could have resulted in any harm. The binding valve was the probable source of the trouble, upon the plaintiff's evidence. It exerted the pulling force that caused the spring to break, permitting the governor to pound upon the rim of the fly wheel. The real ques-

tion in the case is reduced to one of liability of the defendant for furnishing to the Perry-Payne Company, the employer of Marquardt, an engine, for use in its business in which the deceased was employed, equipped with the valve furnished by the defendant. There is no claim that the act was willful or intended to injure. It is equally true that the defendant stood in no contractual relation to the deceased. Does the case come within the rule which renders one liable to persons who use and are injured by a dangerous instrumentality which has been furnished by another under a contract to which the injured party is a stranger? There is a class of cases in which a liability arises in favor of third persons independent of contract, as where an article imminently dangerous to life and safety has been put upon the market, without proper precautions so as to protect those who may have occasion to use it. The liability in such cases is not founded upon contract or relation of privity between the parties, but arises, rather, from the obligation which the law imposes upon all to avoid acts necessarily dangerous to the lives and safety of others. Savings Bank v. Ward, 100 U. S. 195–204, 25 L. Ed. 621. . The liability to third persons in such cases arises, not by reason of contractual relation, for there is none, but, rather, for a breach of duty, which the law imposes, to use one's own so as not by the use of property or by personal misconduct to injure others. An example of such breach of duty is the apothecary who carelessly labels a poisonous drug as harmless medicine, and, as such, puts it upon the market. He is held liable, no matter how many intermediate sales may have taken place. Thomas v. Winchester, 6. N. Y. 397, 57 Am. Dec. 455, cited in Savings Bank v. Ward, supra. In the same state it was held that when a boiler had been furnished, to the acceptance of the purchaser, although the testimony tended to show that it was made of poor iron and improperly constructed, no liability arises to third persons injured by an explosion thereof some three months afterward, while the same was in operation by the purchaser. Losee v. Clute, 51 N. Y. 494, 10 Am. Rep. 638. The Master of the Rolls, in Heaven v. Pender, 11 Q. B. Div. 503, seems disposed to extend the doctrine so as to require ordinary care to make an article safe; and where, from the neglect of such ordinary care and skill, an injury happens to a stranger, a legal liability arises, to be enforced by an action for negligence. But as Judge Dallas points out in a well-considered opinion in Bragdon v. Perkins-Campbell Company, 30 C. C. A. 567, 87 Fed. 109–111, this doctrine did not meet with the approval of the other judges in the case in which it is stated, and is not sanctioned by the other English cases and text-writers of authority. If this were the law, a dealer in machinery which may become dangerous by reason of defective machinery or faulty construction would be under an obligation to use ordinary care in its construction and the selection of materials, not only to the persons with whom he deals and to whom he owes contractual obligations, but also to others who might have occasion to use the machine furnished, and to whom no duty of contract or employment is owing. This would be an extension of the doctrine of negligence, without support, as we view it, in reason or authority. This does not mean that no duty is owing to the pub-

lic in the use of dangerous agencies. No one has the right to use his own to the injury of others, or in such wise as is calculated to injure others acting within their rights. In the case of Savings Bank v. Ward, supra, Mr. Justice Clifford, after commenting upon the apothecary's case in affixing the wrongful label, says:

"Such an act of negligence being imminently dangerous to the lives of others, the wrongdoer is liable to the injured party, whether there be any contract between them or not. Where the wrongful act is not immediately dangerous to the lives of others, the negligent party, unless he be a public agent in the performance of some duty, is, in general, liable only to the party with whom he contracted, and on the ground that negligence is a breach of the contract. Collis v. Selden, Law Rep. 3 C. P. 496."

Applying the principles thus settled, did the plaintiff make out a case wherein one is shown to have put upon the market an article imminently dangerous to life or property, so that it might be reasonably expected that those having to do with it would be subjected to injury? We think this question must be answered in the negative. The valve did not work well, it is true; but it was of a pattern which the makers claimed to have extensively used, and which the purchasers of the engine knowingly permitted to be substituted, at least for trial purposes, in the engine purchased. After the accident it was used for several months without resulting in harm, so far as the record discloses. There is an entire lack of proof that the makers knew or ought to have known that the use of such a valve was "immediately" or "imminently" dangerous to human life or safety, so as to make it a breach of duty owing to strangers to supply it to a customer who might use it in a business in which third persons would be employed. We perceive no analogy between the case at bar and the wrongfully labeled poison, or the insecure and improperly constructed scaffold, where liability was held to attach in favor of innocent third persons.

As the testimony introduced by the plaintiff did not make out a case of furnishing for use a dangerous agency, within the rule stated, the trial court was warranted in directing a verdict for the defendant. Had the jury returned a verdict for the plaintiff, it would have been the duty of the court to set it aside and award a new trial. In such cases the court may direct a verdict in accordance with the requirements of the testimony. Railroad Co. v. Commercial National Bank, 123 U. S. 727, 8 Sup. Ct. 266, 31 L. Ed. 287; Elliott v. Railroad Company, 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068; Southern Pacific R. Co. v. Pool, 160 U. S. 438–441, 16 Sup. Ct. 338, 40 L. Ed. 485.

Note. This opinion was prepared by Judge DAY while a member of this court.