### TOLEDO, ST. L. & W. R. CO. v. KOUNTZ.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1909.)

No. 1,861.

1. MASTER AND SERVANT (§§ 285, 289*)—INJURIES TO SERVANT—RAILROADS—UN-BLOCKED FROG—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for death to a switchman while his foot was caught in an unblocked frog, whether decedent's foot was caught before he was struck by the train, and whether he was at the switch when he gave the signal to the train to approach and caught his foot as he was leaving the switch for his station, or whether he was walking ahead of the train

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

in a dangerous place and his foot was jammed into the frog after he was struck, *held* for the jury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. §§ 285, 289.*

Duty of railroad companies to block switches, see note to Hauss v. Lake Erie & W. R. Co., 46 C. C. A. 98.]

2. MASTER AND SERVANT (§ 291*)—INJURIES TO SERVANT—RAILROADS—"PROXIMATE CAUSE."

A request to charge that the term "proximate cause" meant the first or efficient cause, and if the jury found that there were several causes contributing to decedent's death, then the proximate cause was the cause coming first which set in motion the other causes producing the accident, was properly refused as susceptible of an interpretation that, if decedent was negligent in crossing defendant's tracks in front of an approaching train, his act was necessarily the proximate cause of the accident, and as overlooking the rule that the proximate cause is the dominant cause from which the injury follows as a direct and immediate consequence; that an act prior in time is not necessarily the proximate cause of an injury, unless the injury is the natural and probable consequence of such act, to be reasonably anticipated therefrom, or if the injury could not have happened but for the intervention of a sufficient and independent cause operating between the first negligent act and the injury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 291.*

For other definitions, see Words and Phrases, vol. 6, pp. 5758-5769; vol 8, p. 7771.]

3. MASTER AND SERVANT (§ 291*)—DEATH OF SERVANT—INSTRUCTIONS.

In an action for death of a switchman whose foot was caught in an unblocked frog as he was crossing the tracks in front of a train, a request to charge that proximate cause was the first or efficient cause, and that if the jury found there were several causes contributing to decedent's death the proximate cause was the cause coming first which set in motion the others producing the accident, was properly refused as eliminating the proposition that an unblocked frog might have been an efficient and independent cause of the accident, without which it could not have happened, though decedent was negligent in crossing the tracks ahead of the train.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 291.*]

4. MASTER AND SERVANT (§ 291*)—DEATH OF SERVANT—RAILROADS—UNBLOCKED FROG—NEGLIGENCE—INSTRUCTIONS.

Where a switchman was killed after catching his foot in an unblocked frog, and the jury were permitted to find for plaintiff only on the theory that decedent's death was caused by the negligent condition of the frog, a request to charge that if decedent, before he attempted to cross the tracks, knew that defendant's train was approaching at rapid speed, and with such knowledge attempted to cross ahead of the train, and that this was the proximate cause of his death, plaintiff could not recover, was properly refused, as charging that plaintiff could not recover if his act in crossing the tracks ahead of the train was the proximate cause of his death, though such crossing was in the regular discharge of his duty and he had no other way to go to his station and was free from negligence.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 291.*]

5. MASTER AND SERVANT (§ 112*)—RAILROADS—SAFETY REQUIREMENTS—STATUTES—UNBLOCKED FROGS.

Rev. St. Ohio, § 3365-18, requiring every railroad operating in the state to block its frogs in yards, divisional and terminal stations, where trains are made up, is designed for the protection not only of employés who may step into them, but also of those dragged or pushed into them by

an engine; a railroad's failure to comply therewith constituting negligence as a matter of law.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 112.*

Duty of railroad companies to furnish safety appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

6. **MASTER AND SERVANT (§ 112*)—DEATH OF SERVANT—RAILROADS—UNBLOCKED FROGS—STATUTES.**

Rev. St. Ohio, § 3365—18, requiring railroads within the state to block all angles in frogs, switches, and crossings, is expressly limited to frogs in yards, divisional and terminal stations, where trains are made up.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 112.*]

7. **MASTER AND SERVANT (§ 278*)—DEATH OF SWITCHMAN—EVIDENCE.**

In an action for death of railroad switchman by being run over after catching his foot in an unblocked frog, permitted so to remain in violation of Rev. St. Ohio, § 3365—18, evidence *held* to justify a finding that the frog in question was located in a railroad yard where trains are made up, and was therefore within the statute.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 278.*]

8. **TRIAL (§ 191*)—INSTRUCTIONS—ASSUMED FACTS.**

The court did not err in assuming that the place where decedent was injured was a frog in a railroad yard, where trains were made up, which the railroad company had negligently failed to block in violation of Rev. St. Ohio, § 3365—18, where it would have been the duty of the court to set a finding to the contrary aside.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 191.*]

9. **TRIAL (§ 237*)—INSTRUCTIONS—"PREPONDERANCE OF PROOF"—"PERSUADED."**

An instruction that by "preponderance of proof" is meant that the jury are persuaded of the soundness of the claim more satisfactorily than the contrary was not objectionable because the word "weigh" was not employed, nor as implying that the jury might be persuaded by arguments rather than proof, as the jury could properly understand the term "persuaded" only to mean that the proof must be more persuasive, more convincing.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 542, 548–551; Dec. Dig. § 237.*

For other definitions, see Words and Phrases, vol. 6, pp. 5516–5518, 5367.]

10. **MASTER AND SERVANT (§ 296*)—DEATH OF SERVANT—INSTRUCTIONS.**

Where, in an action for death of a railroad switchman by being run over while his foot was caught in an unblocked frog, it was uncontradicted that the frog had been in that condition for two months preceding the accident, and that decedent, who had been in the same employment for a year or more, was required to inspect the switches, where the frog was located, every time a train passed, the court did not err in omitting to charge that if decedent, in the exercise of ordinary care, could have discovered that the frog was unblocked, he must be charged with knowledge thereof, there being no request to charge that decedent was presumed to have known the condition of the frog.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 296.*]

11. **MASTER AND SERVANT (§ 296*)—DEATH OF SERVANT—CONTRIBUTORY NEGLIGENCE—"SUBSTANTIAL CONTRIBUTION."**

An instruction that, where the negligence of an employé actually contributes to the results, his negligence would not be compared, provided it was a "substantial contribution" to the accident, was not objectionable on the theory that any negligence on decedent's part was sufficient to defeat the action, since negligence, unless "substantial," could not be said to contribute directly and proximately to the injury.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 296.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

12. TRIAL (§ 296*)—INSTRUCTIONS—ERROR CURED BY OTHER INSTRUCTION.

An instruction that decedent's contributory negligence, in order to defeat a recovery, must be "substantial," was not prejudicial to defendant, where the court afterwards charged that, if decedent's failure to exercise ordinary care contributed to the accident resulting in his death, plaintiff could not recover.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 296.*]

13. TRIAL (§ 251*)—INSTRUCTIONS—APPLICABILITY TO ISSUES.

The court did not err in refusing to give defendant's proposed instructions relating to grounds of negligence withdrawn from the jury.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 587–595; Dec. Dig. § 251.*]

14. APPEAL AND ERROR (§ 1004*)—SCOPE OF REVIEW—DAMAGES—EXCESSIVENESS—VERDICT.

Objections that the damages are excessive, and that the verdict is against the law and the evidence, are for the determination of the trial court on a motion for a new trial, and cannot be reviewed by the Circuit Court of Appeals.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3944–3947; Dec. Dig. § 1004.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Chas. A. Schmettau, for plaintiff in error.

Chas. A. Thatcher, for defendant in error.

Before LURTON and SEVERENS, Circuit Judges, and KNAPPEN, District Judge.

KNAPPEN, District Judge. The defendant in error, plaintiff below, sued to recover damages on account of the death of his intestate, which is alleged to have been caused by his being run over by the defendant's yard train, in consequence of the catching of his foot in a frog, connected with a switch which was unblocked. Plaintiff's petition alleged negligence in the operation of the engine, in failing to have a headlight on the engine, and in running the train at an unlawful rate of speed. It also alleged a violation of section 3365—18 of the Revised Statutes of Ohio, which requires every railroad operating in that state to "adjust, fill or block, all angles in frogs, switches, and crossings on their roads in all yards, divisional and terminal stations where trains are made up." All the grounds of negligence except the violation of the statute referred to were withdrawn by the court from the consideration of the jury. There was a verdict and judgment for the plaintiff, and a denial of motion for new trial.

At the conclusion of the testimony the defendant moved for a peremptory instruction in its favor, upon the ground that plaintiff had failed to prove by a preponderance of the evidence that failure to block the frog was the proximate cause of the accident, and that the plaintiff was shown by the proofs to have been guilty of contributory negligence. Miller, the decedent, was employed by the defendant as night watchman at the crossing of Hamilton street and defendant's tracks in the city of Toledo. The tracks in this section run in a northerly and

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

southerly direction. About a block south of Hamilton street the railroad crosses a swing bridge over Swan creek. A little north of Hamilton street there were three switches, one running to the west of the main track, a second extending east and north, and a third, known as the "Schenk coalyard switch," going off to the south and east. It was Miller's duty on the approach of a train from the north to see that the bridge (to the south) was closed, that the switches (to the north) were properly set for the main track, and then to give a signal to the approaching train that the track was clear; the train being required to await that signal 300 or 400 feet north of the Hamilton street crossing. After giving the signal it was Miller's duty to take his station on the west side of the tracks and on the northerly side of Hamilton street to protect traffic at the crossing. The frog in the coalyard switch had been entirely unblocked for about two months. The evidence amply supports the conclusion that Miller's death was caused by the catching of his foot in this unblocked frog connected with the coalyard switch. The propositions on which the peremptory instruction was asked, so far as their discussion is justified, rest upon the contention that the catching of Miller's foot in the frog was due to his own negligence. The theory on which the alleged negligence is predicated is that at the time he signaled the train to come on he was on the west side of the tracks; that it was his duty to go at once to the north side of Hamilton street and west of the tracks; that from the place where the signal was given there was an open space between the tracks eight feet in width leading to his station referred to; that he had thus no occasion to cross the tracks or to be at the frog in question; that the evidence indicates that he was either crossing the tracks or walking ahead of the approaching train when not required to do so in the performance of his duties; and that the probabilities favor the theory that his foot was jammed into the frog after he was struck by the train.

There is evidence tending to support this theory, viz., testimony indicating that immediately before the signal was given Miller was seen coming toward the railroad tracks down an alley between Hamilton street and the next street north, and thus toward the three switches in question; that a little later the signal to the train was given from the west side of the tracks and near the north side of Hamilton street. This testimony, however, was not undisputed. There was testimony to the effect that the signal was not required to be given from the west side of the tracks, but was properly given upon the tracks and at the switch; that the reason assigned for giving the signal upon the westerly side of the tracks, viz., that the signals were given to the engineer, did not apply in this case, from the fact that the engine which pulled the train in question was headed northerly and was thus running backwards, the engineer being thus on the east side; the fireman, whose opportunities for observation were fully as good as those possessed by the engineer, was unable to say that Miller was seen in the alley or that the signal was not given at the switch in question; and the testimony of the engineer was discredited by his testimony immediately following the accident, alleged to be inconsistent with his testimony upon the trial, and by other evidence. There was ample room under the testimony for the

conclusion that Miller's foot was caught in the frog before he was struck by the train, and that he was so overtaken by reason of his foot being caught; and the testimony, considered together, was entirely consistent with his having been at the switch when the signal to the train was given, and with the catching of his foot as he was leaving the switch for his station on the north side of Hamilton street. There was no error in refusing the request for a peremptory instruction.

Complaint is made of the court's refusal to give certain requests presented by defendant, numbered 7 and 16, both directed to Miller's alleged negligence in crossing the tracks ahead of the train. Each of these requests contained a definition of proximate cause. Request No. 7 contained the instruction that plaintiff could not recover without proving that defendant's negligence was the proximate cause of Miller's death. The court submitted to the jury, under careful instructions, the question of Miller's contributory negligence, placing sharply before the jury the conflicting claims of the parties.

The jury was told that if Miller, while engaged in the performance of his work, or, having just performed his duty, was leaving the place where he had performed it, and while exercising ordinary care for his own safety, was caught by his foot in an unblocked frog, and in consequence of being thus caught was killed, the plaintiff was entitled to recover; that, on the other hand, if Miller was not himself exercising ordinary care for his own safety, and if failure to exercise such ordinary care contributed to the accident, there could be no recovery; and, specifically, that if Miller was struck and killed while walking along the track, between the rails, no recovery could be had; and, further, upon defendant's request, that if, after giving the signal, it was Miller's duty to go to the crossing of Hamilton street, and if he could reach that crossing by walking between the tracks, where he was safe from the approaching train, but if, instead of doing so, he walked along the track on which the train was running, ahead of the train, such action was the proximate cause of death—in which case, even though Miller's foot was caught in an unblocked frog, the defendant would not be liable. A further instruction requested by defendant was given, to the effect that if, after giving the signal to the train, Miller, knowing the train was approaching, went upon the track and attempted to run along the track ahead of the train to the crossing of Hamilton street, when he might have gone to the crossing by the side of the track, and in a place where he was safe from the approaching train, and while running along the track caught his foot in an unblocked frog and was hit and run over by the approaching train, then the proximate cause of the death would have been Miller's own act, and no recovery could be had. No abstract definition of proximate cause was given, nor any instructions aimed directly at Miller's negligence in crossing the tracks (as alleged) ahead of the approaching train. Request No. 7 contained this definition of proximate cause:

"By the term 'proximate cause' is meant the first or efficient cause, and if you find from the evidence that there were several causes contributing to Miller's death, then the proximate cause is the cause coming first, which set in motion the other causes producing the accident."

This instruction was rightly refused. It was susceptible of an interpretation that, if Miller was negligent in crossing the tracks in front of the approaching train, such act was necessarily the proximate cause of the accident, being first in time. It overlooked the rule that the proximate cause is the dominant cause from which the injury follows as a direct and immediate consequence; that an act prior in time is not necessarily the proximate cause of an injury, unless such injury was the natural and probable consequence of such act; and that such injury cannot be said to be the natural and probable consequence of the act when it was not one to be reasonably anticipated from it, and when it was one which could not have happened but for the intervention of a sufficient and independent cause operating between the first negligent act and the injury. Milwaukee, etc., Ry. Co. v. Kellogg, 94 U. S. 469, 475, 24 L. Ed. 256; Insurance Co. v. Boon, 95 U. S. 117, 130, 24 L. Ed. 395; Scheffer v. Railroad Company, 105 U. S. 249, 252, 26 L. Ed. 1070; The G. R. Booth, 171 U. S. 450, 458, 19 Sup. Ct. 9, 43 L. Ed. 234; Cole v. German Savings & Loan Society, 124 Fed. 113, 115, 59 C. C. A. 593, 63 L. R. A. 416; Shugart v. Atlanta, K. & N. Ry. Co., 133 Fed. 505, 510, 66 C. C. A. 379. The clause referred to in the instruction asked for overlooked the proposition that an unblocked frog may have been a sufficient and independent cause for the accident, and without which it could not have happened even had Miller been negligent in crossing the tracks ahead of the train. Request No. 16 asked an instruction that if the jury should find "that Miller, before he attempted to cross the tracks, knew that defendant's train was approaching at a rapid rate of speed, and with such knowledge attempted to cross the track ahead of said train, and that this was the proximate cause of his death, as said term has been defined to you above, then you are instructed that the plaintiff is not entitled to recover." This requested instruction, it will be seen, proceeded upon the theory that if Miller's act in crossing the tracks ahead of the train was the proximate cause of his death there could be no recovery, even though such crossing was in the regular discharge of his duty, and although he had no other way to go to his station except by crossing the tracks, and notwithstanding his conduct was entirely free from negligence. The jury was permitted under the charge of the court to find for the plaintiff only upon the theory that Miller's death was caused by the catching of his foot in the unblocked frog. The failure of defendant to comply with the statutory requirement of blocking the frog was negligence as matter of law. C. H. & D. Ry. Co. v. Van Horne, 69 Fed. 139, 140, 16 C. C. A. 182; Lake Erie & Western Ry. Co. v. Craig, 73 Fed. 642, 19 C. C. A. 631; Narramore v. C., C., C. & St. L. Ry. Co., 96 Fed. 298, 300, 37 C. C. A. 499, 48 L. R. A. 68. The statute is designed for the protection not only of employés who may step into them, but of those dragged or pushed into them by an engine. Cooper v. Baltimore & Ohio Ry. Co., 159 Fed. 82, 86 C. C. A. 272, 16 L. R. A. (N. S.) 715. There is no room upon this record for an application of the doctrine of proximate cause as avoiding liability for the death of Miller resulting directly from the imprisonment of his foot in an unblocked frog, except as such proximate cause is predicated upon and involved in Miller's alleged negli-

gence. The instructions given by the court upon the subject of proximate cause were fully as favorable to defendant as it was entitled to ask. In view of the concrete instructions given, the jury could not have been aided by abstract definitions. The requested instructions were properly refused.

It is urged that the statute requiring the blocking of frogs relates only to yards "where trains are made up," and that no proof was presented that the frog in question was in such a yard. Defendant invokes the rule that a statute changing the common law modifies or abrogates it no farther than the clear import of its language necessarily requires. Johnson v. Southern Pac. Co., 117 Fed. 462, 54 C. C. A. 508. The obligation imposed by the statute under consideration is limited by express terms to frogs in "yards, divisional and terminal stations where trains are made up," and it is true that no express testimony was introduced that the switch in question was in such a yard. The evidence, however, afforded by the record was clear and convincing that the place under consideration was a yard of that kind. It is conceded that the place where the injury occurred is but a little way south of the freight station. The map in evidence shows no less than nine or ten switches radiating from the main track within a distance of about three blocks next north of the bridge. The brief of the plaintiff in error states that "Miller was employed by the plaintiff in error as a watchman, switchman, and bridge tender in its yards at Toledo." The train in question was a yard train. Four yard trains on an average pass over the spot under consideration every night. The three switches referred to are spoken of in the testimony as "yard switches" and as being in the "lower yards." These yard trains were for the purpose of or in connection with the making up of trains. The only respect in which the proof can be criticised as lacking is that there is no definite statement that the trains were actually assembled in the immediate strip where the unblocked frog in question was located. It was not necessary that this should be so. The strip in question was clearly part of the yard used for the making up of trains, and so was a yard within the meaning of the statute. It was so clearly part of the yard that had the question of its status been submitted to the jury, and a finding made that it was not a yard where trains were made up, it would have been the duty of the court to set the verdict aside. There was thus no error in assuming that the place where the injury occurred was such a place as covered by the statute. Marquardt v. Ball Engine Co., 122 Fed. 374, 58 C. C. A. 462; Riley v. L. & N. Ry. Co., 133 Fed. 904, 66 C. C. A. 598.

No error was committed in the instruction that "by a preponderance of proof is meant that you are persuaded of the soundness of the claim that the plaintiff puts forth more satisfactorily than to the contrary." This definition is not objectionable from the mere fact that it does not employ the word "weigh"; nor does it contain an implication that the jury were at liberty to be persuaded by argument rather than by proofs. The jury could properly understand the term "persuaded" to mean only that the proof be more persuasive, more convincing.

In view of the evidence, and the other features of the charge, there was no error in failing to instruct the jury that if Miller, in the exer-

cise of ordinary care and prudence, could have discovered the fact that the frog was unblocked, he must be charged with the same knowledge as if it were proven he actually knew of that condition. The court did not submit to the jury the question of Miller's knowledge that the frog was unblocked. The testimony was direct and uncontradicted that it had been in this condition for at least two months immediately preceding the accident, and that Miller, who had been employed in this duty for a year or more, was required to inspect the switches in question every time a train passed. The court would have been justified in instructing the jury that Miller would be presumed to have known that the frog was unblocked, and, had such instruction been requested, would doubtless have done so. No such request was made. The charge seems to assume Miller's knowledge that the frog was unblocked. Such knowledge had no relation to the case, except as it bore upon the question of contributory negligence, and on this subject the jury were sufficiently instructed.

Nor was prejudicial error committed in the instruction upon the subject of contributory negligence that:

"Where the negligence of the employed person actually does contribute to the result that happened to him, we cannot stop to measure under the rule of law as it now exists, how great or how little that negligence is comparatively, provided the negligence of the employé was a substantial contribution to the accident."

The criticism upon this instruction is directed to the word "substantial," the argument being that any negligence of the decedent, no matter how slight, is sufficient to defeat the action. The test of contributory negligence is whether the want of care directly and proximately contributes to the injury. Gilbert v. Burlington, C. N. & R. Ry. Co., 128 Fed. 529, 533, 63 C. C. A. 27; Coney Island v. Dennan, 149 Fed. 687, 693, 79 C. C. A. 375. Negligence could scarcely be said to contribute directly and proximately to the injury unless it were substantial. However, the expression criticised was used in a preliminary statement of the general principles involved. Later, the court charged that, if Miller's "failure to exercise ordinary care for his own safety contributed to the accident resulting in his death," the plaintiff could not recover. This last instruction was rather more favorable to the defendant than it was entitled to. While the word "substantial" is perhaps not a happy term, no prejudice could have resulted from its use.

There was no error in refusing to strike out the testimony of the witness Fallis. There was nothing indicating that Miller's duties had changed since the connection of the witness with the railroad. Moreover, the testimony was not only undisputed, but the same testimony was given by other witnesses conceded to be competent.

The court properly declined to give defendant's proposed instructions relative to the grounds of negligence withdrawn from the consideration of the jury.

The objections that the damages are excessive, and that the verdict is against the law and the evidence, were for the court below to decide upon motion for a new trial, and cannot be considered here.

We find no error in the record, and the judgment of the Circuit Court is affirmed.