# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE DISTRICT COURTS

---

## HARMON et al. v. BARBER.

(Circuit Court of Appeals, Sixth Circuit. January 8, 1918.)

### No. 3037.

1. CARRIERS ☞308—CARRIAGE OF PASSENGERS—DUTY OF CARRIER.

Where a passenger purchased a ticket entitling him to transportation over two lines, and the ticket created two separate and independent contracts, one by each of two railroads, the original carrier, which transported the passenger to a common junction point, owes him some measure of accommodation in connection with the opportunity to effect a transfer at the junction to the line of the second carrier.

2. CARRIERS ☞308—CARRIAGE OF PASSENGERS—INITIAL CARRIER—CONNECTIONS.

Where defendant had no direct line to a passenger's destination, but made connections with another road, it and its station agents had the right to guarantee time for immediate connection with the trains of the second railroad at the point of junction.

3. TRIAL ☞141—PROVINCE OF COURT AND JURY.

Where the testimony as to a certain issue was not conflicting, the question was for the court.

4. CARRIERS ☞308—CARRIAGE OF PASSENGERS—DUTY OF CARRIER—CARE.

Defendants, who as receivers operated a railroad having no direct line to Columbus, sold plaintiff a ticket entitling him to transportation to Columbus by way of Piqua. The ticket contained two coupons, one for carriage to Piqua over the line of defendants, and the other from Piqua to Columbus over the line of another company. The ticket also contained a stipulation that in selling the ticket for passage over other lines, or in checking baggage upon it, defendants acted only as agents, and were not responsible beyond their own line. When the passenger arrived at Piqua, he was given an interdepot transfer ticket, entitling him to be carried by motorcar to the station of the connecting carrier. Compensation for such transfer was paid by defendants. *Held* that, as the transfer occurred about 4:30 in the morning, and as the time was extremely limited, and it not appearing that decedent read or knew the contents of the transfer ticket, it must as matter of law be deemed defendants were liable for negligence of the motorcar driver; the provision that defendants should not be liable beyond their own lines relating obviously to other railroad transportation.

5. TRIAL ☞194(18)—INSTRUCTIONS—REFUSAL.

Where the evidence was conflicting as to decedent's position in a motorcar provided by defendants to transfer passengers from their trains to

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the station of another company, a charge that as a matter of law decedent was guilty of contributory negligence in standing on the running board was properly refused.

6. CARRIERS ⊚══330—PASSENGERS—NEGLIGENCE.
A passenger in a motorcar provided by defendants to transfer their passengers to the line of another company is not guilty of contributory negligence because he took no steps to lessen the speed of the motorcar; the passenger having no control over the driver.

7. CARRIERS ⊚══339—CARRIAGE OF PASSENGERS—CONTRIBUTORY NEGLIGENCE—DEFENSES.
Contributory negligence of a passenger will not bar recovery for his death, unless it directly and proximately contributed to the injury.

8. TRIAL ⊚══261—INSTRUCTIONS—ERRONEOUS REQUESTS.
In an action for the death of a railway passenger, killed when a motorcar in which he was being transferred from defendants' station to the station of a connecting company overturned, the court charged that, if the accident was caused directly by decedent's standing on the running board, there could be no recovery. *Held* that, while "contributed to" would have been a better expression than "caused," yet as the court twice charged in substance that if decedent was guilty of contributory negligence there could be no. recovery, and the court's attention was not called to the use of the word "caused," and defendants' own requested instructions on contributory negligence were faulty, the refusal of such instructions cannot be deemed prejudicial.

9. CARRIERS ⊚══344—ACTIONS—BURDEN OF PROOF.
Burden of proving contributory negligence of a passenger is on the carrier.

10. COURTS ⊚══348—FEDERAL COURTS—PRECEDENTS.
The rule that the burden of proof of contributory negligence of a passenger is upon the carrier is one of general law, and will be enforced by the federal courts, even where the rule of state practice is otherwise.

11. COURTS ⊚══366(23)—FEDERAL COURTS—PRECEDENTS.
A decision by a state court that the violation of a statute limiting the operation of motor vehicles is negligence per se is binding on the federal courts, as a construction of a state statute.

12. CARRIERS ⊚══295(7)—INJURIES TO PERSONS ON STREETS—MOTOR VEHICLES.
A violation of Gen. Code Ohio, § 12604, providing that one operating a motor vehicle at a greater speed than 8 miles an hour in the business and closely built up portion of a municipality, or more than 15 miles an hour in other portions, shall be fined, amounts to negligence per se, and should be so declared in an action for the death of one resulting from the overturning of a motorcar operated in violation of law; the statute being designed, not only for the protection of those using the streets, but those within the car.

In Error to the District Court of the United States for the Southern District of Ohio; Howard C. Hollister, Judge.

Action by Lucinda Barber, administratrix of the estate of James C. Barber, deceased against Judson Harmon and another, receivers of the Cincinnati, Hamilton & Dayton Railway Company. There was a judgment for plaintiff, and defendants bring error. Affirmed.

Waite, Schindel & Bayless and Herbert Shaffer, all of Cincinnati, Ohio, for plaintiffs in error.

Matthews & Klein, of Cincinnati, Ohio, and Reese Blizzard and John F. Laird, both of Parkersburg, W. Va., for defendant in error.

⊚══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN and DENISON, Circuit Judges, and KILLITS, District Judge.

KNAPPEN, Circuit Judge. The plaintiffs in error, as receivers (hereinafter called defendants), through their agent, sold and issued to decedent, Barber, a ticket entitling him to transportation from Toledo, Ohio, to Columbus, in that state, by way of Piqua. The ticket contained two coupons—the one for carriage from Toledo to Piqua, over the line of the Cincinnati, Hamilton & Dayton Railway Company; the other from Piqua to Columbus, by way of the Pennsylvania lines. At Piqua the receivers' agent issued and delivered to decedent a ticket for transfer from the Cincinnati, Hamilton & Dayton depot to the Pennsylvania depot, about a mile distant. While on the interdepot journey the automobile in which decedent was riding was, through the asserted negligence of its driver, overturned and decedent thereby killed. This action is for damages for the death. The case was tried to a jury, resulting in verdict and judgment for the plaintiff administratrix.

The primary and most important question is whether the trial judge rightly held that, upon the record as presented, the defendants' contract of carriage included the transfer between the two depots at Piqua, or whether, as claimed by the defendants, the contract of interdepot transfer was that of an independent transfer company— the defendants, in issuing the transfer, acting merely as the transfer company's agent. This question is rightly treated by counsel for both parties as one of law.

[1-4] The ticket given decedent at Toledo contained the stipulation that in selling the ticket "for passage over other lines or in checking baggage on it, this company acts only as agent and is not responsible beyond its own line." The automobile in which decedent was being transferred from one station to the other was operated by a concern known as the Robbins Transfer Company, engaged in running a line of automobiles, including interdepot transfers in Piqua.

It may be conceded that defendants would not be liable for a negligent injury to decedent while being carried by the Pennsylvania Company from Piqua to Columbus. Auerbach v. N. Y. C. & H. R. R. Co., 89 N. Y. 281, 42 Am. Rep. 290; Pennsylvania Co. v. Loftis, 72 Ohio St. 288, 74 N. E. 182; Nashville & Chattanooga R. Co. v. Sprayberry, 8 Baxt. (67 Tenn.) 341, 35 Am. Rep. 705. It may also be conceded that, had the ticket contained a coupon for transfer by the Robbins Company between the two railway stations, defendants would not be liable for the transfer company's negligence; but the ticket would be regarded as evidencing distinct contracts of carriage with the two railway companies and the transfer company. The ticket, however, contained no coupon or other provision relating to transfer from depot to depot.[1]

---

[1] While a witness testified that there was attached to the ticket a "pink slip," which was exchanged at the Piqua ticket office for the transfer ticket, defendants conceded on the trial, and by brief in this court, that the ticket given decedent in Toledo consisted only of the body and the two railroad coupons.

Defendants contend that the disclaimer of responsibility contained in the ticket applied, nevertheless, to the interstation transfer. Several considerations make strongly against this contention. The natural meaning of the expression "over other lines" would be "other railroad lines," not only under the doctrine of exclusion, but because such lines are alone mentioned in the ticket, which was silent as to transfer. The form of the ticket differs materially from that of the coupons attached to the railway ticket, in that, while both show their issue by the Cincinnati, Hamilton & Dayton Railway (or its receivers), the interdepot transfer ticket shows on its face that it is "good for one through passenger and baggage * * * from C., H. & D. Railway depot to P., C., C. & St. L. Railway depot," and is signed by defendants' general passenger agent; while the railroad coupons not only omit the words "good for," but are without the general passenger agent's signature. Defendants' answer admits that the transfer was issued "in consideration of the purchase price of" the railway ticket. The undisputed testimony of the automobile driver, introduced by defendants, is that on the arrival of the Cincinnati, Hamilton & Dayton train at Piqua "he read the forms of the ticket off to the ticket agent, stating where the party had come from, where he was going, and the form of the ticket," upon which the interdepot transfer ticket was issued. The undisputed testimony of a member of the transfer company, who was defendants' witness, was that the compensation between that company and "the Cincinnati, Hamilton & Dayton is conducted by transfer tickets; we collect these monthly. The chauffeur has charge of the collecting of the transfer tickets." There was otherwise no testimony of the terms of the arrangement between the railroad company and the transfer company; the defendants' answer precludes a defense (which, indeed, is not asserted) that decedent was the passenger of the Pennsylvania Company, or that the latter company contributed toward the payment of the transfer company's charges. The only reasonable interpretation of the record is that defendants made the arrangement for the transfer and paid the transfer company therefor—the amount of such payment, however, not appearing, nor how much, if anything, was added on that account to what decedent would otherwise have paid for the railroad transportation. Presumably defendants charged the passenger, in the aggregate, no more than his through fare on the competing roads. But it is clear that decedent was not to make, and did not make, any payment directly to the transfer company, or have any relation with it other than here stated. If the two roads had had actual rail connection, and were the ticket a through one, it would have been defendants' duty, broadly speaking, in the absence of special contract otherwise, to carry decedent to the end of their own line and deliver him to the Pennsylvania Company. Railroad Co. v. Manufacturing Co., 16 Wall. 318, 324, 21 L. Ed. 297; Pennsylvania Co. v. Jones, 155 U. S. 539, 15 Sup. Ct. 136, 39 L. Ed. 176. What in such case would amount to a delivery to the succeeding carrier we have no occasion to define. But treating the ticket as creating two separate and independent contracts, one by each of the two railroads, for carriage over its own road only, defendants would still have owed decedent some

measure of accommodation in connection with opportunity to effect a transfer, even at a common junction point. Texas & Pacific Ry. Co. v. Bigger, 239 U. S. 330, 335, 338, 36 Sup. Ct. 127, 60 L. Ed. 310; and see Chicago, etc., R. R. Co. v. Stephens (C. C. A. 6) 218 Fed. 535, 545, 546, 134 C. C. A. 263. It was plainly to defendants' interest to provide through connection, in view of the short interval between the arrival of their train and the departure of the Pennsylvania train, and the presumed competition of other shorter, and actually through lines between Toledo and Columbus. Defendants had an undoubted right to guarantee time for immediate connection with the Pennsylvania Railroad at Piqua; indeed, the regular Toledo ticket agent would have had such authority. Hayes v. Wabash R. R. Co., 163 Mich. 174, 177, 128 N. W. 217, 31 L. R. A. (N. S.) 229.

The proposition that the railroad ticket was not in fact a through ticket, but that (as affecting the matter of transfer between depots) decedent had the right to stop at Piqua, loses its force, not only, to some extent, through the fact that the carriage had to be finished the day following the issue of the ticket (which following day was that of the transfer and injury), but especially through defendants' treatment of the ticket (at Piqua) as a through ticket, by delivering to decedent at that place an interdepot transfer ticket showing on its face that it was issued on "through ticket"; and the necessary inference from the record is that defendants' regular practice was to furnish this interdepot transfer on through tickets between Toledo and Columbus, and presumably decedent understood that the price of the transfer was included in the amount paid for his ticket. It must be conceded that, in the absence of contract or custom, defendants would have been under no obligation to transfer decedent to the Pennsylvania station; yet, taking into account all the elements stated, there is, to our minds, but one consideration lending substantial support to defendants' asserted freedom from responsibility, viz. that the transfer contained the words "On account Robbins Transfer Company." But controlling force cannot be given to these words alone, not only because they do not clearly import an agency on defendants' part for the transfer company, but are fully as consistent with an identification for accounting purposes only between defendants and that company, but for the further reason that it does not appear that decedent ever read the transfer or knew that it contained words of the purport stated. The natural inference is to the contrary, for defendants' train was late, and there were but a few minutes to make the transfer to the Pennsylvania depot, and that at about 4:30 o'clock on a March morning; and the testimony is that the issue of the transfer and the taking of the automobile were hurried. The receipt of the transfer under such circumstances was not, in our opinion, enough of itself to make a contract between decedent and the transfer company, nor to advise the former that defendants were relieved from responsibility, or were acting merely as agents for the transfer company therein. In view of the not unusual practice of railroad companies to issue, as a part of through tickets, coupons for transfer lines wholly independent of the railroads, we think decedent, upon the record presented, would naturally have regarded the interdepot transfer (not provided for by

ticket coupon) as the act of defendants. There was no substantial conflict of testimony affecting the point we are considering, and the court had to decide it as matter of law. Indeed, defendants asked for direction in their favor on this question only as matter of law. While the question is not free from difficulty, upon a consideration of the entire record, we think the District Court rightly held that defendants assumed to provide transportation from their station to the Pennsylvania station, and that, so far from defendants being merely the agents of the transfer company, the latter was an agency of defendants, adopted by them for carrying their own passengers to the Pennsylvania station. The instant case is in many respects sui generis. The authorities cited by defendants, with one exception, do not sustain their contention of nonliability, and the doctrine of the excepted case we cannot approve.

[5, 6] 2. There was testimony that previous to and at the time of the upsetting of the car decedent was standing on the running board; that the accident occurred while the machine was descending a long grade and running at from 30 to 35 miles an hour. The court refused to charge, as matter of law, that decedent was guilty of contributory negligence. There was no error in this refusal, for the reason, if for no other, that there was affirmative testimony (which the jury had the right to believe) that decedent was sitting crosswise in the lap of another passenger (who was on the front seat), and thus on the edge of the machine, with his left foot on the inside, his right foot on the outside, and his head inside the car. The testimony as to the speed of the car ranged all the way from 10 to 15 miles up to 35 miles. Decedent was not guilty of contributory negligence from the fact that, as a passenger, having no control over the driver, he took no steps to lessen the speed. Monongahela, etc., Co. v. Schinnerer (C. C. A. 6) 196 Fed. 381, 117 C. C. A. 193.

[7, 8] Complaint is also made of the refusal of certain requests upon the subject of contributory negligence. Their subject-matter was fully covered by the charge, unless in the fact that the effect of decedent's standing upon the running board was thus stated:

"If the accident was directly caused by his standing on the running board, the plaintiff cannot recover."

Decedent's contributory negligence would bar recovery, if, but not unless, it directly and proximately contributed to the injury. Toledo, etc., Ry. Co. v. Kountz (C. C. A. 6) 168 Fed. 840, 94 C. C. A. 244. "Contributed to" would have been a better expression than "caused." However, the court at least twice charged, in substance, that if decedent was guilty of contributory negligence plaintiff could not recover. The court's attention was not called to the criticism now made. Presumably, had that been done, the language would have been suitably modified. We find no reversible error in this respect. Indeed, defendants' request on the subject of contributory negligence was faulty, in omitting the words "directly and proximately," or their equivalents.

[9, 10] 3. The trial court properly charged that the burden of proof of contributory negligence was on defendants. The rule is one of general law, enforced by the federal courts, even where the rule of the

state practice is otherwise. Central Vermont Ry. Co. v. White, 238 U. S. 512, 35 Sup. Ct. 865, 59 L. Ed. 1433, Ann. Cas. 1916B, 252; Erie R. R. Co. v. Weinstein (C. C. A. 6) 166 Fed. 274, 92 C. C. A. 189.

[11, 12] 4. The Ohio statute (G. C. § 12604) provides that one operating a motor vehicle at a greater speed than 8 miles an hour in the business and closely built up portions of a municipality, or more than 15 miles an hour in other portions thereof, shall be fined not more than $25. The accident occurred within the municipal limits. The trial court charged that the operation of the automobile at more than 15 miles an hour was negligence, and would be actionable if it brought about the injury. Defendants criticize this instruction, first, as making an unlawful speed negligence per se, instead of merely evidence of negligence, and, second, on the ground that the statute was designed for the protection of those using the streets, and not for those within the car. We cannot agree with this contention. True, in Grand Trunk Ry. Co. v. Ives, 144 U. S. 408, 12 Sup. Ct. 679, 36 L. Ed. 485, it was said, speaking of the violation of a city ordinance, that the better and more generally accepted rule is that:

"Such an act on the part of a railroad company is always to be considered by the jury as at least a circumstance from which negligence may be inferred in determining whether the company was or was not guilty of negligence."

The Supreme Court of Ohio, however, in Schell v. Du Bois, 94 Ohio St. 93, 113 N. E. 664, L. R. A. 1917A, 710, in construing this very statute, held, as stated in the syllabus, that:

"The violation of a statute passed for the protection of the public is negligence per se, and where such act of negligence by a defendant is the direct and proximate cause of an injury not directly contributed to by the injured person, the defendant is liable."

This we think a construction of the Ohio statute, and as such binding upon the federal courts. Nor do we agree with the proposition that the opinion of the court makes it clear that the purpose of the statute was not to protect those within the machine, but only those without. Such distinction would not, in our judgment, be a reasonable one. The construction thus put upon the statute in question is in harmony with the rule frequently announced by the Supreme Court of Ohio and by this court, in construing frog-blocking and other protective statutes, viz. that the breach of a statute designed for the protection of the public is negligence per se.[2] Section 12603 does not, in our opinion, modify the effect of section 12604.

The judgment of the District Court is affirmed.

[2] Variety, etc., Co. v. Poak, 89 Ohio St. 297, 306, 106 N. E. 24; Krause v. Morgan, 53 Ohio St. 26, 43, 40 N. E. 886; Toledo, etc., Ry. Co. v. Kountz, 168 Fed. 838, 94 C. C. A. 244; Cooper v. B. & O. Ry. Co., 159 Fed. 82, 86, 86 C. C. A. 272, 16 L. R. A. (N. S.) 715, 14 Ann. Cas. 693; Sterling Paper Co. v. Hamel, 207 Fed. 300, 302, 125 C. C. A. 44; Crucible Steel Forge Co. v. Moir, 219 Fed. 151, 154, 135 C. C. A. 49.