## SEESTED v. POST PRINTING & PUBLISHING CO. et al.

(District Court, D. Colorado. October 28, 1926.)

### No. 7323.

**I. Libel and slander �köm123(2).**

Construction of writing is for court, unless its meaning is not clear, and proof of extrinsic facts is necessary to determine meaning.

**2. Courts �köm352—Instruction in libel case, that under state Constitution jury were sole judges of law and facts, held properly refused (Conformity Act [Comp. St. § 1537]).**

Every litigant in federal court has inherent right to have law of case determined by judge, and instruction in libel case that under state Constitution jury are sole judges of law and facts was properly refused, notwithstanding Conformity Act (Comp. St. § 1537).

**3. Libel and slander ⊙═123(2).**

If alleged libelous articles are susceptible of more than one meaning, one of which may be libelous, question should be submitted to jury.

**4. Libel and slander ⊙═123(2)—Whether newspaper articles, charging that newspaper officer contributed money to Imperial German government, without giving date, were libelous, held for jury.**

Whether newspaper articles, charging that officer of another newspaper contributed money to Imperial German government, without stating date, were libelous, *held* for jury under proper instructions.

**5. Libel and slander ⊙═86(4).**

If newspaper article was libelous per se, innuendo pleaded by defendant was surplusage.

At Law. Action by Frank C. Seested against the Post Printing & Publishing Company and others. On defendants' motion for a new trial after judgment for plaintiff. Motion granted.

I. N. Watson, of Kansas City, Mo. (R. R. Brewster, of Kansas City, Mo., on the brief), for plaintiff.

Ivor O. Wingren, of Denver, Colo. (John T. Bottom, of Denver, Colo., on the brief), for defendants.

SYMES, District Judge. I have before me the motion of the defendant for a new trial, filed some time ago. The last brief, however, was not filed until early last month. Two grounds urged in support of the motion require serious consideration:

First, the refusal of the court to give the following instruction: "The court instructs the jury that under the Constitution of the state of Colorado, in this case, the jury are the sole judges of both the law and the facts."

Second, the giving of the following instruction: "The court has a certain duty in this case to perform, which cannot be avoided, and has decided and instructs you that the article is libelous per se; that is, as a matter of law it was a libel, and the question left for you to decide is what damages, if any, the plaintiff, Frank Seested, is entitled to."

If the court erred in refusing the first, or in giving the second, the motion must be granted. The alleged libels were published in defendant's newspaper.

[1] I. It has always been the law that the construction of a writing is for the court, except where its meaning is not clear, and proof of extrinsic facts is necessary to determine its meaning. The English courts from an early date applied this rule to libel suits, and consistently instructed juries that published articles were or were not libelous, leaving to the jury only the fact of publication and the assessment of damages. The mere publication of the truth concerning parties, proceedings, or incidents subjected them to prosecution for criminal libel, and numerous prosecutions followed. A jury trial in this class of cases became for all practical purposes a nullity; the guilt or innocence of the defendant being, in effect, determined by the court.

As newspapers and other publications grew in importance, they became increasingly restive under such restrictions, and as a result of long agitation Mr. Fox's Libel Act of 1792 was enacted. It provided that in prosecutions for libel the jury might find a verdict of guilty or not guilty upon the whole matter in issue, and permitted the court to give its opinion and directions to the jury in like manner as in other criminal cases. Theoretically this statute applied only to criminal prosecutions, but the principle was gradually applied by the English courts to civil actions for libel.

Putting aside the partisan arguments, pro and con, made at the time this act was before Parliament, it may be said that its object was not to have juries pass upon the law of such cases, but rather to declare that the question of libelous intent was a question of fact, and as such within the province of the jury. Four

states of the Union, among them Colorado, have either constitutional or statutory enactments declaring that, in all suits or prosecutions for libel, the truth thereof may be given in evidence, and that the jury, under the direction of the court, shall determine the law and the fact.

The question thus presented on this action is: Should the federal court in Colorado instruct the jury in a libel suit that it is the sole judge of the law of the case as well as the facts? If so, it admittedly constitutes an exception to the rule in the federal courts that in civil as well as in criminal cases the court is the judge of the law, and the jury of the facts, and that the jury are bound to accept the law as so declared.

The ancient maxim of the English common law, "Ad quaestionem facti non respondent judices; ita ad quaestionem juris non respondeat juratores," was accepted and affirmed by Blackstone and other jurists as a matter of course. Lord Mansfield, among others, declared that by the law of England juries cannot rightly decide questions of law. There can be no doubt, it seems to me, that, when the framers of our Constitution provided therein for trials by jury, they had in mind what that term meant under the then existing law of England.

At that time the Fox Libel Act was not a part of the English common law, though the principle involved had been the subject of bitter and widespread controversy for several years; so it is fair to assume that it had come to the attention of some of the members, at least, of the constitutional convention. A year or two later, when the first Congress proposed to the states the first amendment, specifically dealing with freedom of speech and of the press, nothing was said about it. It will thus be seen that the federal courts simply recognize and follow one of the oldest and most firmly established doctrines of the English common law, and that the provision of the Colorado Constitution, referred to, constitutes a novel and radical departure therefrom.

Section 1537, U. S. Comp. Stats., commonly known as the Conformity Act, prescribes that the practice, pleading, forms, and modes of procedure in civil causes, other than those in equity and admiralty, shall conform as near as may be to the practice, pleading, forms, and modes of procedure existing at the time in like causes in the courts of record of the state in which the District Courts are held. This statute has been construed by the Supreme Court in numerous cases. Its language might seem to be mandatory.

However, that court, in Indianapolis & St. Louis Ry. Co. v. Horst, 93 U. S. 291, 23 L. Ed. 898, said that it is to some extent, at least, directory and advisory only; that the conformity required is "as near as may be," and it has said that this does not mean "as near as may be possible," or "as near as may be practical"; further, that "it devolved upon the judges to be affected the duty of construing and deciding, and gave them the power to reject, as Congress doubtless expected they would do, any subordinate provision in such state statutes which, in their judgment, would unwisely encumber the administration of the law, or tend to defeat the ends of justice, in their tribunals."

In that case the refusal of a federal judge to follow a state statute requiring the jury to answer special interrogatories in addition to their general verdict, was upheld; the court saying "that such provisions are not within the intent and meaning of the act of Congress, and have no application to the courts of the United States."

The Practice Act of Illinois, at one time, if not now, provided that the court should instruct the jury only as to the law, and that the jury should on their retirement take the written instructions of the court and return them with their verdict. In Nudd v. Burrows, 91 U. S. 426, 23 L. Ed. 286, a federal court in Illinois commented upon the evidence, without withdrawing from the jury the determination of the facts, and refused to allow the jury to take to their room the written instructions given. On appeal it was argued that such action was a violation of the Conformity Act. The court, however, held otherwise, and pointed out that it was the object of that statute to bring about a uniform practice, especially in states where code procedure prevailed, as distinguished from the common-law pleading, forms, and practice, previously adhered to in the federal courts, but that the personal administration by the judge of his duties while sitting upon the bench had never been complained of, objected to, and no one had sought a remedy in that direction, saying: "The personal conduct and administration of the judge in the discharge of his separate functions is, in our judgment, neither practice, pleading, nor a form nor mode of proceeding within the meaning of those terms as found in the context," and "if the proposition of the counsel for the plaintiff in error be correct, the powers of the judge, as defined by the common law, were largely trenched upon."

Shepard v. Adams, 168 U. S. 618, 18 S. Ct. 214, 42 L. Ed. 602, was a case that went to the Supreme Court of the United States from this court on a question of jurisdiction. It was contended that the defendant had not been brought within the jurisdiction of the court by a proper writ of summons. It was not denied that the writ in question was in accordance with the existing rule of the local federal court, but did not conform to the provisions of the Code of Civil Procedure of Colorado. The jurisdiction was upheld.

In Sparf and Hanson v. U. S., 156 U. S. 51, 15 S. Ct. 273, 39 L. Ed. 343, the question of the duty of the jury to receive the law from the court is exhaustively considered by Mr. Justice Harlan.

Times Pub. Co. v. Carlisle, 94 F. 762, 36 C. C. A. 475, is the only federal case I can find in which a similar constitutional provision is adverted to. Judge Sanborn there quotes the similar constitutional provision of Missouri. Without deciding the question, he states that the federal courts are not bound by subordinate provisions of state statutes. As a corollary to these cases the Supreme Court has said that there is nothing in the federal Constitution that requires a state to maintain the line with which we are familiar between the functions of the jury and those of the court. It may do away with the jury altogether. Chicago, Rock Island & Pac. Ry. Co. v. Cole, Administratrix, 251 U. S. 54, 40 S. Ct. 68, 64 L. Ed. 133. This case well illustrates the principle that state and federal courts are equally independent of each other in such matters.

Many other cases can be cited in which federal courts have not felt themselves bound by state decisions or statutes. A few instances are: A penal action based upon a state statute cannot be maintained in a federal court. It has been held that the conformity statute does not contemplate the adoption of state regulations, which are rules of right rather than of practice. Mutual Building Fund Society v. Bossieux, 17 Fed. Cas. No. 9977. Federal courts follow their own rules in respect to presumption and burden of proof, regardless of state law. Harmon v. Barber, 247 F. 1, 159 C. C. A. 219, L. R. A. 1918F, 428. Federal courts have their own fixed rule in directing a verdict. New Amsterdam Casualty Co. v. Farmers' Co-operative Union (C. C. A.) 2 F.(2d) 214; Small Co. v. Lamborn, 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597. National courts are not bound to follow state courts on questions of general or commercial law. Parramore v. D. & R. G. W. R. R. Co. (C. C. A.) 5 F.(2d) 912. These are only a few of the many cases that demonstrate that the conformity statute is to be strictly construed, and relates only to matters of form, pleading, and practice, as these terms are used in a narrow sense.

It is proper and necessary to consider the consequences that would logically follow the adoption of the view urged by counsel for the defendant. They say there is no danger but that the court's views of the law would prevail in any given case, in view of the court's power to set the verdict aside, grant a new trial, etc. However, if the jury was entitled to decide the law, the judge, to be consistent, should give up these prerogatives for the same reasons that now render him powerless to control the views of a jury on the facts. Otherwise it would be an invasion of their province. [2] Every litigant in the federal court has an inherent right to have the law of the case determined by the judge. It is not hard to imagine why this right is most valuable and necessary for the protection of his property, as well as his liberty. If the jury were to declare the law, who could say in advance what the law on any given question is? The judge would, or should, at least, abstain from the responsibility of stating the law to them, and would not be justified in directing a verdict, irrespective of the weakness of the prosecution, or of the plaintiff's testimony, as the case might be. The inevitable result would be that the rights and liberties of our citizens would be determined by an irresponsible tribunal, ignorant of the law, instead of one trained in jurisprudence and disciplined by study and experience, or, to put it another way, by a tribunal that makes its own law, as distinguished from one that would follow the law impartially as laid down by statute, eminent jurists, or decided cases, irrespective of persons, times, or popular agitation.

In Iron Mountain Ry. v. Vickers, 122 U. S. 360, 7 S. Ct. 1216, 30 L. Ed. 1161, it is stated: "A state Constitution cannot, any more than a state statute, prohibit the judges of the courts of the United States from charging juries with regard to matters of fact." And in U. S. v. Reading R. R. Co., 123 U. S. 113, 8 S. Ct. 77, 31 L. Ed. 138, the Supreme Court said: "Trial by jury in the courts of the United States is a trial presided over by a judge, with authority, not only to rule upon objections to evidence, and to instruct the jury upon the law, but also, when in his judgment the due administration of justice requires it, to aid the jury by explaining and commenting upon the testimony, and even

giving them his opinion upon questions of fact, provided only he submits these questions to their determination." See, also, Capital Traction Co. v. Hof, 174 U. S. 1, 19 S. Ct. 580, 43 L. Ed. 873.

It should also be borne in mind that this case is not one removed here from the state court. If the federal court is bound by local state enactments, such as this, most of the distinctions between federal and state practice and substantive law could be wiped out at the option of any state, and uniformity in federal jurisprudence ended. As to the merits of such a result I express no opinion, but it is not for a lower court to make what I consider such a radical departure from well-established principles.

[3, 4] II. On this point the argument of the defendant is persuasive. The rule is that, if the articles in question published by the defendant are susceptible of more than one meaning, one of which may be libelous, the question should be submitted to the jury. What does the article complained of charge? Briefly, it is that the plaintiff, Frank C. Seested, an officer of the "Kansas City Star," contributed money to the Imperial German government. The date thereof is not given. The authority for the statement is the alleged testimony of one Russell, an employee of the Bureau of Investigation of the Department of Justice, taken in another libel suit brought by the "Kansas City Star" against the "Kansas City Post." Part of the testimony is set forth. It is that the confidential files of the government contain data in regard to these alleged contributions. Part of the articles refer to the brother of the plaintiff, a stranger to this suit.

[5] A person reading the article might reasonably infer that the contributions were made before America entered the World War. If so, the plaintiff only did what thousands of other foreign-born citizens of various nationalities did. The question is: What effect the language complained of would naturally produce on the minds of persons of reasonable understanding, taking into consideration all the surrounding circumstances. It might be different from that which the court entertains. Therefore, whether the publication was a libel—that is, injurious to the reputation of the plaintiff—is a question of fact, that should have been left for the jury to decide under proper instructions. Security Benefit Ass'n v. Daily News (C. C. A.) 299 F. 445. If libelous per se, the innuendo pleaded by plaintiff is surplusage.

For this reason, the motion for a new trial is granted.