**McADOO, Director General, et al. v. Mc-CLURE et al.    (No. 682.)**

(Court of Civil Appeals of Texas. Beaumont. May 12, 1921. Rehearing Denied June 1, 1921.)

**1. Carriers ⬅270—Cannot be compelled to transport passengers over lines other than their own.**

A carrier cannot be compelled to transport passengers over any line other than its own, unless it has voluntarily contracted to so do, either expressly or impliedly.

**2. Carriers ⬅307(4)—Limitation of liability to carrier's own line valid.**

A ticket stating that in selling ticket for passage over other lines the selling carrier acted only as agent and was not responsible beyond its own line *held* valid notwithstanding failure to disclose names of other carriers for which such company acted as agent.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. Carriers** ⚙️➡️307(6)—**Limitation of liability for injury during transportation over other "lines" held not restricted to railroad lines.**

Passenger ticket providing that carrier in selling ticket "for passage over other lines" acted as agent and was not responsible beyond its own line, and containing coupon entitling buyer to free transportation by bus between two depots on transfer from one train to the other, *held* to preclude recovery against such carrier for injuries sustained during transportation by such bus; the words "over other lines," within limitation of liability, not being restricted to railroad lines.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Line.]

**4. Trial** ⚙️➡️228(1)—**Instructing jury to direct inquiry to liability of defendant railroad and defendant bus company on directing verdict for other defendants not error.**

In a personal injury action against a railroad, a bus company, and others, the court, after instructing a verdict as to other defendants, did not err in instructing the jury to direct their inquiry against the railroad and the bus company, as against the bus company's contention that it was prejudiced by jury's attention having been directed to the fact that it was a joint defendant with the railroad in a personal injury action.

**5. Appeal and error** ⚙️➡️1170(9)—**Instruction as to duty of one defendant could not prejudice other defendant.**

In an action against a railroad and a bus company for injuries to passenger sustained during transportation by the bus from defendant railroad's train to another train between two depots, instruction as to the duty of the railroad and bus company, where only issue submitted related to one act of negligence charged to bus company's employee, *held* not prejudicial to the bus company under court rule 62a (149 S. W. x), as against contention that the legal responsibility of the railroad was a matter of law for the court.

**6. Appeal and error** ⚙️➡️882(12)—**Party, having requested more complete instruction, could not complain of court's action in giving it.**

A party, having requested a fuller instruction as to a matter covered in the main charge, could not complain of court's action in giving it.

**7. Appeal and error** ⚙️➡️1033(5)—**Instruction restating facts which plaintiffs were required to prove not prejudicial to defendants.**

In a personal injury action, where the court in its main charge defined proximate cause, the granting of another instruction on defendants' request for a more complete definition of proximate cause restating the facts which the plaintiffs were required to prove in order to establish their case *held* not prejudicial to defendants, being more favorable to them than the law required, in that it may have tended to emphasize the burden of proof to the prejudice of the plaintiffs.

**8. Trial** ⚙️➡️352(4)—**Plaintiffs entitled to submission of issue of negligence as they had pleaded it.**

In an action against carriers for injuries to passenger, plaintiffs were entitled to the submission of the issue of negligence as the plaintiffs had pleaded it.

**9. Trial** ⚙️➡️296(7)—**Charge on burden of proof after submission of issue of negligence not error, in view of correct charge on burden of proof on whole case.**

In action for injuries to passenger, refusal to follow the submission of the issue of negligence by a charge on the burden of proof, where the court gave a correct charge on the burden of proof on the whole case, *held* not error.

**10. Trial** ⚙️➡️352(1)—**Submission of whether act of negligence constituted one of a number of proximate causes not error.**

Submission of whether an act of negligence was "a" proximate cause, instead of using words "the proximate cause," *held* not error, since an act of negligence is actionable though it is merely one of a number of proximate causes.

**11. Trial** ⚙️➡️232(2), 244(6)—**Instruction on injuries sustained held not to unduly emphasize.**

In action for injuries to passenger causing a miscarriage, instruction that, "unless you believe from the testimony before you that the miscarriage or abortion of plaintiff was due and caused by the injury, if any, that she sustained, you will not take into consideration said miscarriage, or abortion, or any suffering therefrom or any expenses incurred because thereof in assessing damages," *held* proper, as against contention that it was on the burden of proof in a case submitted on special issues, and unduly emphasized the facts of the miscarriage and the suffering therefrom.

**12. Trial** ⚙️➡️260(3)—**Refusal of requested instruction on burden of proof held not error in view of instruction given.**

In action for injuries to passenger, refusal of defendants' request to instruct the jury that plaintiff had the burden to establish the affirmative of certain special issues submitted to them *held* not error, in view of the court's charge on the burden of proof sufficiently safeguarding defendants' rights, from which the jury must have understood that plaintiff had the burden of establishing the affirmative of such special issues.

**13. Trial** ⚙️➡️351(5)—**Negligence of driver of bus held properly submitted in special issue.**

In action for injuries to passenger of bus sustained when automobile backed into one of the horses of the bus, special issue *held* to sufficiently submit question of bus driver's negligence in leaving the horses, unfastened and unsecured at the time of the accident, and refusal of requested issue proper.

**14. Carriers** ⚙️➡️305(6)—**Liable where negligence of employee was proximate cause, notwithstanding negligence of third party proximately contributing.**

Transfer company was liable for injuries to passenger of bus where one of the proximate causes thereof was the negligence of the bus driver in leaving the horses unfastened, even though the backing of an automobile against one of the horses was a proximate cause.

---

⚙️➡️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from District Court, Harris County; Ewing Boyd, Judge.

Action by Mary McClure and another against W. G. McAdoo, Director General of Railroads, Edward S. Boyles, receiver of the Houston Transfer Company, and others. The action was dismissed as to defendants other than Walker D. Hines, Director General, and Edward S. Boyles, receiver. Judgment was rendered for plaintiffs against such defendants, and they appeal. Affirmed as to defendant Boyles, receiver, and reversed and rendered as to defendant Hines, Director General.

Wm. H. Wilson, McMeans, Garrison & Pollard, and Edward S. Boyles, all of Houston, for appellants.

Woods, Barkley & King, of Houston, for appellees.

WALKER, J. We take the following statement of the case from appellants' brief:

"This (by plaintiffs' amended petition) was an action filed by Mrs. Mary McClure and husband against Walker D. Hines, Director General, operating International & Great Northern Railway, against James A. Baker, receiver of I. & G. N. Railway, against Walker D. Hines, Director General, operating the Texas & New Orleans Railway, and against Edward S. Boyles, receiver of Houston Transfer Company, claiming that on July 27, 1918, the horses attached to the bus of the Houston Transfer Company ran away with said bus at the depot of the Texas & New Orleans Railroad Company in Houston, Tex., owing to said horses not being securely hitched, causing injuries to plaintiff Mary McClure resulting in a miscarriage. The petition alleged that Mary McClure was transported by ticket purchased at Huntsville on the line of the I. & G. N. Railway, which provided for through transportation from Huntsville to Beaumont, Tex., including transfer from depot of I. & G. N. Railway to depot of T. & N. O. Railway at Houston, Tex. (plaintiffs' third amended petition). The defendant Walker D. Hines, Director General, operating T. & N. O. Railway, the defendant Edward S. Boyles, receiver of Houston Transfer & Carriage Company, the defendant James A. Baker, receiver of I. & G. N. Railway, and the defendant Walker D. Hines Director General, operating the I. & G. N. Railway, each filed separate answers. On a trial had, the plaintiffs dismissed their action against James A. Baker, receiver, and W. G. McAdoo, Director General, and after the coming in of the evidence the court directed a verdict in favor of Walker D. Hines, Director General of Railways, operating T. & N. O. Ry. The evidence developed that the plaintiff traveled on a coupon ticket purchased at Huntsville, Tex., from the I. & G. N. Railway, with one coupon for the I. & G. N. Railway, with one coupon for the transfer company, and with one coupon for Texas & New Orleans Railway."

On the verdict of the jury, judgment was rendered in favor of appellees against Walker D. Hines, as Director General operating the I. & G. N. Railway, and against Edward S. Boyles, receiver of the Houston Transfer & Carriage Company, in the sum of $3,500. Both defendants have duly perfected their appeal.

We find that the evidence fully sustains appellees' allegations of fact. As supplementing the above statement, we give the following additional facts:

(1) The ticket in question contained the following contractual provisions material to this appeal:

"(1) In selling this ticket for passage over other lines and in checking baggage on it, this company acts only as agent and is not responsible beyond its own line."

"(8) No agent or employee of any line named in this ticket over which the original purchaser is entitled by the terms of this ticket to travel has any power to alter, modify, or waive in any manner any of the conditions named in this contract."

"(10) The use of this ticket is in itself an acceptance of the conditions of this contract."

The transfer coupon was as follows:

"Issued by International & Gt. Northern Railway
"Transfer—Houston, Tex.
"Depot I. & G. N. to Depot S. P. Lines or to Hotel
"Not good from Hotel

| Alexandria, La. Baton Rouge, La. Beaumont, Tex. Colmesneil, Tex. Dayton, Tex. Huntington, Tex. Kountze, Tex. | Lake Charles, La. La Fayette, La. Liberty, Tex. Nacogdoches, Tex. New Orleans, La. Orange, Tex. Sour Lake, Tex. |

On conditions named in Contract.

| Form 2885 | ONE PASSAGE Worthless if detached | If Sold as half (½) Punch Here |
| | Via I&GN Tr SP Lines | |

(2) Some man in uniform at the I. & G. N. depot (quoting Mrs. McClure's testimony) "carried me to the same bus to which the conductor of the I. & G. N. train had directed me." This man assisted her on the bus, took possession of her ticket, tore off the transfer coupon, and redelivered to her the remainder of the ticket.

(3) The Houston Transfer & Carriage Company had a contract with the T. & N. O. Railroad Company to transfer passengers to its depot from the I. & G. N. depot on these transfer coupons, and on a monthly statement, from the transfer company, settled for these transfer coupons. On this issue George A. Hill testified:

"The coupon tickets on through railway tickets which entitled passengers to transfer were handled by our company in this way: They were taken up by the company and billed out against the railway. It was billed out against the receiving line, not the issuing railroad line.

They were billed once a month, and it would be for the number of these coupons that had been collected during that month; all of this would be sent to the receiving line once a month by us for the purpose of getting our pay. The railways paid, or rather liquidated these coupons. They paid 25 cents for each coupon."

(4) Mrs. McClure had made the trip from Huntsville to Beaumont prior to her purchase of this ticket, and at the time it was issued and delivered to her she knew that she would have to be transferred from the I. & G. N. depot to the T. & N. O. depot. As she had this interdepot trip, she knew that the I. & G. N. did not operate a train between the depots, and that she would have to use some means of conveyance other than a railroad train.

(5) At the time the agent issued and delivered to her the ticket he informed her that she was paying for her transfer between the two depots, and without additional cost to her, she was entitled to be transferred from one depot to the other. On this issue she testified:

"When I bought my ticket at Huntsville the agent who sold it to me told me I was entitled to ride free from the Union Station (I. & G. N. depot) to the Grand Central Station (T. & N. O. depot) in Houston."

[1] The law does not compel a carrier to transport its passengers over any line other than its own. As said by our Supreme Court in Harris v. Howe, 74 Tex. 534, 12 S. W. 224, 5 L. R. A. 777, 15 Am. St. Rep. 862:

"It is only because the carrier has voluntarily contracted to do so that it can be required to transport a passenger over any other than its own line, and it results that, like other contracting parties, it may define the terms and limit the extent of its undertaking over other lines, in so much as may be required to leave upon them the responsibilities of their own negligence."

[2, 3] Such an obligation can arise only by contract, either express or implied. In the absence of contract or custom (and no custom is pleaded in this case), the Director General was under no obligation to transfer Mrs. McClure from the I. & G. N. depot to the T. & N. O. depot. The ticket issued and delivered to Mrs. McClure, being valid in its contractual provisions (G. C. & S. F. v. Looney, 85 Tex. 158, 161, 162, 163, 165, 166, 19 S. W. 1039, 16 L. R. A. 471, 34 Am. St. Rep. 787; Mosher v. St. Louis, I. M. & S. R. Co., 127 U. S. 390, 8 Sup. Ct. 1324, 32 L. Ed. 249–251; Clark v. G., H. & S. A. Ry. Co., 137 S. W. 716–718; Moore v. Missouri, Kansas & Texas Ry. Co., 18 Tex. Civ. App. 561, 45 S. W. 609, 610; Harris v. Howe, 74 Tex. 534, 537, 538, 12 S. W. 224, 5 L. R. A. 777, 15 Am. St. Rep. 862), excludes the inference of such an obligation by express contract. As the seller of the ticket, the Director General expressly limited his liability to his own line, and expressly stated that he was acting only as agent for the other lines. It cannot be said in this case, as was intimated in Harmon v. Barber, 247 Fed. 1, 159 C. C. A. 219, L. R. A. 1918F, 428, that the meaning of the expression "over other lines" would be "over other railroad lines," because the transfer coupon was made a part of the ticket, and was sold, as appears from its face, "on conditions named in this contract." There is nothing in this contract to give these words this restricted meaning, while in the Harmon v. Barber Case the transfer coupon was not a part of the ticket when it was delivered to the passenger, and consequently could not have included the transfer company.

Nor is the Director General liable on the proposition that he did not disclose the name of his principal when the ticket was issued and delivered. Reference to the transfer coupon shows that no transfer company was named. As shown by the quoted testimony of Mrs. McClure, while she was yet a passenger of the Director General, his servants pointed out to her the transfer bus and delivered her safely to the agent of the transfer company. All that could be said in favor of appellees on this proposition is that a cause of action may lie against an agent for an undisclosed principal when such cause of action accrues before he reveals the name of his principal. In this case the agent delivered Mrs. McClure safely to his principal, and her injury was occasioned wholly by the negligence of the principal. Chief Justice Gaines said, in Brackenridge v. Claridge, 91 Tex. 533, 44 S. W. 821, 43 L. R. A. 593:

"We do not think that the agent of the undisclosed principal can be held responsible for the subsequent dealings with the principal after the agency is disclosed."

But, even if this proposition of law did not relieve the Director General of liability, the other circumstances of this case do. All that can be urged against this contract is that it is ambiguous as to the means by which Mrs. McClure was to be transferred between the two depots. Looking to the testimony, we find that she had made this trip before, and knew she would have to resort to bus transportation, that the agent told her when the ticket was issued that it entitled her to this transportation without an additional extra charge, and that she used the ticket knowing that the I. & G. N. did not deliver its passengers to the T. & N. O. depot. Knowing this agency of the Director General, she could have demanded the name of his principal when the ticket was delivered. As this was not done, he fully discharged his duty to her by pointing out his principal and delivering her safely to it before any liability had attached under the transfer coupon. As we construe the facts of this case, they also exclude an implied contract on the part of the

Director General to deliver Mrs. McClure to the T. & N. O. depot.

Both parties have cited Harmon v. Barber, supra, as authority for their respective contentions. We agree with the able judge who wrote the opinion in that case that its facts make it sui generis, and while on its facts it is not in point in this case, yet the legal principles discussed are, in our judgment, decisive against the contention of appellees. It follows that the court erred in giving the charge complained of, and that a judgment should have been instructed in favor of the Director General.

[4] The receiver of the Houston Transfer & Carriage Company advances the following propositions as grounds for reversal of the judgment against him:

(1) "In directing the jury to consider their inquiry against defendant railroad company and defendant receiver. This is error in itself, and doubly so when it subjects Boyles, receiver, to the prejudice of having the jury's attention directed to the fact that it is a joint defendant with the railroad company in a damage suit for personal injuries."

The court did not err against the receiver in this charge. We do not recognize that there is such a prejudice against railroad companies as to preclude juries from rendering impartial judgments against their codefendants. Having instructed a verdict as to some of the defendants, the court correctly directed the jury to direct their inquiry against the remaining defendants.

(2) "In directing the jury, in paragraphs (c) and (d) of his charge, that a duty rested on the defendant railroad company and defendant transfer company to use ordinary care in transporting the plaintiff. The case being submitted on special issues, this is error; and it is more pointed error when the issue submitted is only as to one act of negligence claimed against an employé of Boyles, receiver. If any legal responsibility rested on the International & Great Northern Railway Company for the alleged injuries thus caused, it was a matter of law for the court, and no concern of the jury. The effect of the error is highly prejudicial."

[5] The charges complained of under this proposition announced correct principles of law. We do not see how this defendant was prejudiced by these charges. If error, they must come under rule 62a (149 S. W. x).

(3) "In (a) giving two charges defining 'proximate cause,' one of which was correct and one of which was incorrect; and (b) refusing to strike from his charge the incorrect definition of 'proximate cause.'"

[6, 7] The definition of "proximate cause," as submitted by the court in his main charge, was correct. The defendant asked for a fuller charge on that issue, which was given in the language requested by them. Having requested a fuller definition of "proximate cause," the defendant is not in position to complain of the court's action in giving it. Besides, this additional definition only restated the facts which the plaintiffs were required to prove in order to establish their case, and was more favorable to defendants than the law required, in that it may have tended to emphasize this burden, to the prejudice of plaintiffs.

(4) "In submitting special issue No. 1, for the reason (a) that it unduly emphasized and called attention to the fact that the horses were left unfastened and unsecured; and (b) because said issue was not accompanied by the proper charge placing the burden of proving same upon the plaintiff."

[8, 9] In submitting the issue of negligence, the court submitted it as plaintiff pleaded it. This plaintiffs were entitled to. No error was committed in refusing to follow the submission of this issue by a charge on the burden of proof. The court gave a correct charge on the burden of proof on the whole case.

(5) "In asking the jury to say whether the act of negligence of the employees of Boyles, receiver, was 'a' proximate cause, instead of 'the' proximate cause."

[10] Under this proposition appellant contends that, while plaintiff pleaded only one ground of negligence, and the testimony shows several grounds of negligence, any one of which may have been a proximate cause of plaintiff's injury, they cannot recover, in the absence of a finding by a jury that the ground of negligence submitted was "the" proximate cause. We cannot sustain him in this contention. All that is necessary is for the plaintiff to show negligence, and that such negligence is "a" proximate cause of the injury. There may be one or more proximate causes in every negligence case.

[11] (6) "In giving paragraph (h) of the court's charge, for the reasons (a) because such charge is on the burden of proof; (b) because it indicates that the jury knew the result of each issue and its effect upon the several parties; (c) because it unduly emphasizes the facts of the miscarriage and suffering therefrom; (d) because where the case is submitted on special issues, such a charge is not proper, and is prejudicial; (e) because in said paragraph the charge on the burden of proof is improper in directing the jury that the burden of proof is on the plaintiff to establish her case, and that, unless she had met this burden, the issue submitted should be answered against her."

The court's charge complained of in this proposition is as follows:

"In this connection you are instructed that, unless you believe from the testimony before you that the miscarriage or abortion of plaintiff was due and caused by the injury, if any, that she sustained, you will not take into consideration said miscarriage or abortion, or any suffering therefrom, or any expenses incurred because thereof, in assessing her damages."

This charge announces a correct legal proposition, and is not subject to any of the criticisms urged.

[12] (7) "In refusing to give the special charges Nos. 2 and 3 requested by the appellant, directing the jury that the burden of proof is upon the plaintiff to establish, by preponderance of evidence, the affirmative of special issues Nos. 1 and 2 submitted to them."

The court did not err in refusing to give the special charges referred to in this proposition. The court's charge on the burden of proof is as follows:

"You are also instructed that the burden is on the plaintiff to establish her case by a preponderance of the testimony, and, unless you believe she has met this burden, you will answer the issues herein submitted against her"

—and sufficiently safeguarded the rights of defendant. Under it the jury must have understood that the burden of proof rested upon the plaintiffs to establish the affirmative of the special issues submitted.

[13] (8) "In refusing to give special issue No. 1, requested by appellant, which is the proper form in which the determination as to the negligence vel non of defendant Boyles, receiver, should be submitted to the jury."

Special issue No. 1 submitted by the court was as follows:

"Was the driver of the omnibus in which plaintiff Mary McClure was a passenger guilty of 'negligence' as that term has been hereinbefore defined to you, in leaving the horses unfastened and unsecured at the time and place and under all the circumstances in evidence before you?

"You will answer this question 'Yes' or 'No,' as you may find the facts to be.

"If you have found, in answer to the preceding question, that the defendants were not negligent, you need not answer any of the remaining questions."

The receiver requested the court to submit this issue as follows:

"Was the employee of Boyles, receiver, negligent, as that term has hereinbefore been defined, in not fastening or securing the horses attached to the transfer omnibus at the time it arrived at the T. & N. O. station."

We are unable to see any difference between these two charges. If there is any difference, the issue submitted was proper, under plaintiffs' pleadings, and the answer of the jury thereto was responsive to the issue.

(9) "In refusing to give special issue No. 2 requested by appellant, which inquires of the jury whether such act of negligence was 'the' instead of 'a' proximate cause of said alleged injury."

What we said above under the fifth proposition disposes of this contention.

[14] (10) "In refusing to give special issue No. 3 requested by appellant, which inquired of the jury whether the backing of the auto-

mobile against one of the horses was the proximate cause of the injury. Appellant was entitled to have his defense affirmatively presented by this issue. The error of the court in this respect is a most vital and controlling one."

An affirmative finding on the issue requested by appellant, as stated in this proposition, could not have availed him. Had the jury found that the backing of the automobile against one of the horses was a proximate cause of the injury, it would not have been a defense to plaintiffs' cause of action. Under the facts of this case, he was not entitled to go to the jury on an issue as to whether such backing was "the" proximate cause of the injury, in the sense that it was the sole proximate cause. The jury having found the receiver guilty of negligence in leaving the horses "unfastened and unsecured," plaintiffs were entitled to go to the jury on the issue as to whether such negligence was "a" proximate cause of the accident.

(11) "In refusing to give the special issue No. 4 requested by appellant, inquiring of the jury as to whether or not the injury to the plaintiff was the result of an inevitable accident."

On the facts of this case, the court did not err in refusing to submit the issue of inevitable accident. Grundy v. Greene, 207 S. W. 964; Railway Co. v. Cook, 214 S. W. 539; and Eastern Texas Electric Co. v. Hunsucker, 230 S. W. 817, and Eastern Texas Electric Co. v. Woods, 230 S. W. 498 (the latter two cases being from this court, and not yet officially reported).

(2) "(a) In permitting Dr. P. R. Denman to answer a hypothetical question in which facts not in evidence were assumed by the question; and (b) by permitting the witness, in his answer to the question, to make a voluntary answer, not responsive to the question, and prejudical to the appellant."

The facts do not sustain the receiver in this proposition. The facts developed fully warranted the hypothetical question submitted to Dr. Denman, and no error was committed in receiving his answer.

(13) "In refusing to set aside the verdict of the jury, it being apparent that the verdict and the amount thereof were contrary to the weight and preponderance of the evidence, and that this appellant has been subjected to a degree of prejudice to which he should not have been subjected by reason of having the attention of the jury too forcibly directed to the presence of the railroad company as a defendant in a damage suit for personal injuries."

In our judgment, the facts fully sustain the finding of negligence, and also the amount of the judgment.

The judgment of the trial court against the receiver is in all things affirmed. The judgment against the Director General is reversed and rendered in his favor.